IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

ANTHONY ROBBIN,

Plaintiff,

vs. Civ. No. 11-879 JP/RHS

CITY OF SANTA FE;
RAY RAEL, individually and in his official capacity;
GALEN BULLER, individually and in his official capacity;
ROBERT P. ROMERO, individually and in his official capacity;
CHRISTINE KUBELI, individually and in her official capacity; and
NANCY JIMENEZ, individually and in her official capacity.

Defendants.

MEMORANDUM OPINION AND ORDER

Plaintiff retained Andrew Hall as an expert in police procedures. Mr. Hall has prepared an expert report and an addendum to that report (collectively, Mr. Hall's report). Mr. Hall has been deposed by Defendants. Defendants now move to exclude Mr. Hall's expert report and testimony. *See* DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF ANDREW HALL (Doc. No. 54) (Motion to Exclude), filed Oct. 22, 2012.

Defendants specifically attack Mr. Hall's opinions for lack of reliable methodology, lack of relevancy, improper legal conclusions, and for impermissible credibility determinations.[1] Plaintiff opposes the Motion to Exclude and, should the Court deny the Motion to Exclude, Plaintiff asks that the Court award him attorney's fees and costs incurred in responding to the Motion to Exclude. *See* PLAINTIFF'S RESPONSE TO DEFENDANTS' DAUBERT MOTION

[1]For only the purpose of the Motion to Exclude, Defendants will not challenge Mr. Hall's qualifications.

TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF ANDREW HALL (Doc. No. 65) (Response), filed Nov. 10, 2012.

*A. Background*

*1. The CIVIL COMPLAINT (Doc. No. 1) (Complaint)*

This is an employment case involving a police officer who was employed by Defendant City of Santa Fe (City). Plaintiff was a Lieutenant with the City police department when he applied in October 2007 for the position of classified full-time Captain. Plaintiff alleges in the Complaint that he was offered the position of Captain and that he accepted that offer on December 5, 2007. Complaint at ¶ 12.

Plaintiff then alleges that on April 16, 2008, Defendant Galen Buller, the acting City Manager, coerced and threatened Plaintiff into signing a Memo which stated that: (1) the rank of Captain was an exempt position; (2) Plaintiff held the rank of Captain "at the pleasure of the Chief of Police" with the approval of the City Manager; (3) the City "may demote [Plaintiff] from this rank at any time for any reason;" (4) Plaintiff did not "have a property right to this rank or the corresponding pay raise;" (5) Plaintiff was not "entitled to any hearings or proceedings of any kind or nature prior to [his] removal from this rank and the appropriate reduction in salary;" and (6) "[o]ral representations and promises about security in this rank or other conditions of holding this rank [were] not authorized by [Defendant Buller], the City Manager, and [were] unenforceable." Doc. No. 1-9.

About three years later, Plaintiff received a Memo on April 26, 2011 from Defendant Ray Rael, interim City Chief of Police, stating that Plaintiff was being demoted from Captain to the rank of Lieutenant "effective immediately." Doc. No. 1-7 at 1. Defendant Rael explained that Plaintiff served "as a Captain . . . in an exempt (at will) position subject to the pleasure of the

Chief of Police, with the right of reversion to the rank of Lieutenant." *Id*. Defendant Rael further explained that Plaintiff did not have a right of appeal and that Defendant Rael had the discretion to demote Plaintiff. Defendant Rael justified the demotion on three grounds: (1) Plaintiff failed to comply with Defendant Rael's "directive to wear a duty uniform;" (2) Plaintiff failed to comply with Deputy Chief Gillian Alessio's direction to wear a duty uniform; and (3) Defendant Rael was "dissatisfied" with Plaintiff's "failure to explain the source and methodology of the statistics [Plaintiff] provided to the media and the Public Works/CIP and Land Use Committee regarding the DUI Forfeiture program on Monday April 24, 2011." *Id*.

Plaintiff also maintains in the Complaint that on the same day he received the demotion Memo Defendant Nancy Jimenez, a Human Resources Administrator, and Defendant Rael "shared confidential disciplinary information" about Plaintiff. Complaint at ¶ 16. Moreover, Ms. Jimenez sent Plaintiff an email that day stating "if he did not decide quickly on retirement that the demotion to Lieutenant and 10% reduction in pay would take place." *Id*. Plaintiff decided to retire "involuntarily" as a Captain rather than be demoted to the position of Lieutenant.

Plaintiff is now suing for breach of employment contract, breach of the covenant of good faith and fair dealing, violation of the Fourteenth Amendment due process clause under 42 U.S.C. § 1983, and for constructive discharge. Plaintiff contends in the Complaint that the employment contract "was partly written, partly oral, and partly implied." *Id*. at ¶ 14. He further contends that Defendants violated various personnel policies and procedures.

*2. Mr. Hall's Report*

Mr. Hall lives in California and has a background in law enforcement and administration. Mr. Hall's experience includes being a public safety consultant, an interim municipal public

safety director, a retired chief of police, and an interim city manager. Mr. Hall has also conducted "organizational assessments and reviews of law enforcement agencies." Doc. No. 54-2 at 5. In addition, Mr. Hall is an active member of the California State Bar Association, and holds a master's degree in human resources and organization development.

Although Mr. Hall makes various findings and assertions in his report and deposition testimony, he ultimately offers two opinions:

(1) "the promotion of [Plaintiff] to police captain, with material alterations to job status and due process protection, was a process inconsistent with generally accepted standards and practices in municipal government or police service," and

(2) "the demotion of [Plaintiff] for acts unsupported by any type of evidence whatsoever, and which are low level acts or omissions, as described, was inconsistent with generally accepted standards and practices in a contemporary police organization." Doc. No. 54-3 at 2.

*B. Discussion*

Fed. R. Evid. 702 governs the admission of expert witness reports and testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes on the Court a gatekeeping obligation to ensure that expert evidence is admitted only if the evidence is reliable and if the evidence would "be helpful to the jury." *North American Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th

Cir. 2009). The Court, however, is mindful that it should liberally admit expert evidence. *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995).

In this case, the Plaintiff, as the proponent of Mr. Hall's expert evidence, has the burden of showing that Mr. Hall's expert evidence is admissible. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Of course the relevance of expert evidence must, like all evidence, be weighed against "a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The decision to admit or deny admission of expert evidence is subject to an abuse of discretion review. *North American Specialty Ins. Co*, 579 F.3d at 1111.

*1. The Reliability of Mr. Hall's Report and Testimony*

Defendants argue first that Mr. Hall's report and testimony should be excluded because they are not based on reliable principles or methods. "Reliability questions may concern the expert's data, method, or his application of the method to the data." *Nacchio*, 555 F.3d at 1241. A court should focus on the methodology, not on the conclusions generated by the methodology. *Id.* In cases like this one, where the expert evidence does not rely on a "scientific" method, the court must evaluate that evidence "by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702 advisory committee notes (2000 amendments). Moreover, the terms "principles" and "methods" are still relevant even when the expert evidence is based on specialized knowledge.

*Id*. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*.

Plaintiff makes several arguments to support a determination that Mr. Hall's opinions are reliable. First, Plaintiff argues that "[i]f a judge prevents an expert from testifying on the ground that the expert or his opinions seem unreliable, the judge interferes with the jury's exercise of these powers." Response at 4-5. This argument is contrary to both Rule 702 and Tenth Circuit Court of Appeals case law which require that the Court only admit expert evidence that is reliable. Second, Plaintiff cites to *Compton v. Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir. 1996) for the proposition that under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) expert evidence which relies on specialized knowledge, experience, or training, like Mr. Hall's evidence, need not be based on methodologies or principles. The United States Supreme Court, however, rejected this premise in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) which held that the court's gatekeeping function applies to scientific evidence as well as to expert evidence based on specialized knowledge. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.2 (10th Cir. 2001) (quoting *Kumho*, 526 U.S. at 141). In fact, the current Rule 702 reflects the holding in *Kumho* that the Court must assess all expert evidence for reliability. *See* Fed R. Evid. 702 advisory committee notes (2000 amendments).

Finally, Plaintiff observes that Mr. Hall's opinions are reliable because they are based on contemporary practices and standards in police organizations which he has gleaned from his education, experience, and training. Although reliability cannot be established on "conjecture or speculation," neither does reliability require "absolute certainty." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). "[A]s long as a logical basis exists for an expert's

opinion . . . , the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." *See id. at* 662-63. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but" otherwise reliable evidence. *Daubert*, 509 U.S. at 596.

Here, Mr. Hall's "methodology" consisted of reviewing the facts, applying his education and training to the facts in order to identify any issues, and then applying rules or standards he is familiar with to those issues in order to formulate an opinion. Doc. No. 65-2 at 14-15. This is a rational approach to identifying and analyzing issues, albeit rather generic in nature. Nonetheless, Mr. Hall's experience in operating a police department and his experience, education, and training in municipal administration supports a finding that police employment policies are within the range of Mr. Hall's knowledge. One would be hard-pressed to conclude that Mr. Hall's methodology is simply speculative and based on conjecture. Consequently, Mr. Hall's methodology has at least a logical basis and as such could be considered a reliable methodology.

*2. The Relevance of Mr. Hall's Expert Report and Testimony*

Next, Defendants assert that Mr. Hall's report and testimony should be excluded because they are not relevant, i.e., they would not be helpful to a jury. Plaintiff argues that Mr. Hall's expert evidence would aid untrained jury members "on the standards and customs in the administrative operation which are controlled by both the City's Personnel Rules/Regulations and Policies (398 pages) and the Police Department's Directives Manual (also hundreds of pages long)." Response at 11. On the other hand, Defendants contend that "standards and customs" are not relevant to the resolution of the legal issues in this case. In fact, Mr. Hall stated at his

deposition that there are no written national standards on how a governmental entity should terminate or demote employees. Deposition of Andrew Hall (Doc. No. 54-1) at 13. Mr. Hall further conceded "that the only way to determine whether a termination, a demotion of a government employee is proper is with regard to legal standards of the 14th Amendment, state statutes, and city ordinances." *Id*.

Plaintiff has not demonstrated that the establishment of a national standard or custom is somehow relevant to an alleged breach of contract, breach of the covenant of good faith and fair dealing, violation of the Fourteenth Amendment, and constructive discharge. Additionally, Plaintiff has not persuaded the Court that a jury would be unable to understand the applicable policies and procedures without the aid of an expert. In sum, Plaintiff has not carried his burden of showing that Mr. Hall's expert evidence would be relevant or helpful to the jury. Hence, Mr. Hall's report and testimony should be excluded for this reason alone. Even so, for the sake of thoroughness, the Court will address Defendants' other arguments in favor of excluding Mr. Hall's expert evidence.

*3. Legal Conclusions within Mr. Hall's Report and Testimony*

Defendants also argue that Mr. Hall's report and testimony should be excluded because they contain impermissible legal conclusions. Although an expert "witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms," expert opinions which embrace legal standards can, nonetheless, be excluded for the follwoing reasons: (1) likelihood of confusing the jury, (2) "danger of unfair prejudice," or (3) "the inability of such evidence to assist the trier of fact." *Sprecht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988); *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987). When an attorney testifies as an expert witness on the law two additional potential harms

may arise: (1) the "jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is more knowledgeable than the judge in a given area of law;" and (2) "testimony on ultimate issue of law by the legal expert. . . is detrimental to the trial process" because it creates a likelihood of jury confusion by presenting competing versions of the law by the expert, a potential rebuttal witness, and the court. *Sprecht*, 853 F.2d at 809. Ultimately, a witness cannot define the law, i.e., a witness cannot "direct the jury's understanding of the legal standards upon which their verdict must be based . . . ." *Id.* at 810.

Plaintiff contends that "Mr. Hall's opinion may properly be used to aid the jury in understanding the facts and evidence, even though references to those facts are couched in legal terms." Response at 13. Mr. Hall, however, admitted in his deposition testimony that he did not segregate the legal questions in this case from the human resources questions. Deposition of Andrew Hall (Doc. No. 54-1) at 26. Mr. Hall also made several legal conclusions: (1) the City's practice of treating the rank of captain as an exempt position violates the City's Personnel Rules/Regulations and Policies, *id.* at 65; (2) language from Defendant Rael's April 26, 2011 Memo demoting Plaintiff establishes due process rights for Plaintiff, Doc. No. 54-2 at 8; and (3) the New Mexico Peace Officer's Employer-Employee Relations Act establishes due process rights for Plaintiff, *id.* Although Plaintiff concedes in his Response at 13- 14 that a non-lawyer can read and interpret the City's Personnel Rules/Regulations and Policies as well as the New Mexico Peace Officer's Employer-Employee Relations Act, *see* Doc. No. 65-1 at 2 and Doc. No. 65-2 at 120-21, Plaintiff does not dispute that Mr. Hall applied the law as he understands it to the language of those documents to conclude that the documents establish due process rights, a legal conclusion which the jury should determine after the Court has instructed it on the appropriate law. Moreover, Mr. Hall's legally integrated opinions as well as these particular legal

conclusions would not aid a jury in making a factual determination. Instead, because Mr. Hall is an attorney, these legal opinions and conclusions could potentially cause confusion, unfair prejudice, and usurp the Court's role in instructing the jury on the law. For these additional reasons, Mr. Hall's expert report and testimony are subject to exclusion under both Rule 702 and Rule 403.

*4. Credibility Determinations*

Finally, Defendants argue that Mr. Hall's report and testimony should be excluded because they contain impermissible credibility determinations. First, Mr. Hall states in his report that "[t]he discipline of a command level officer for violating a directive to 'wear a duty uniform' strains credibility." Doc. No. 54-2 at 9. Second, Mr. Hall states in his report that "[d]isciplinary action based on a performance deficiency as vaguely worded as 'failure to explain the source and methodology of statics [sic] . . .' similarly strains the bounds of credibility." *Id*. at 10. Although expert credibility evidence may in some circumstances be permissible, it is generally not acceptable. *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001). The Tenth Circuit has found several reasons why credibility evidence should be excluded:

> First, "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702. Also, a proposed expert's opinion that a witness is lying or telling the truth might be "inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." Yet another rationale for exclusion is that the testimony of impressively qualified experts on the credibility of other witnesses is prejudicial, unduly influences the jury, and should be excluded under Rule 403.

*Id.* (citations omitted).

Plaintiff asserts that it was proper for Mr. Hall to have made the disputed credibility determinations because they are supported by facts. Oddly, Plaintiff specifically cites to a portion of Mr. Hall's deposition testimony addressing his opinion that Defendant Buller's April 16, 2008 Memo was an attempt to forfeit Plaintiff's property right in the rank of Captain. Response at 13; Doc. No. 65-2 at 118-19. Mr. Hall's credibility determinations, however, refer to Defendant Rael's April 26, 2011 demotion Memo.

Plaintiff also seems to suggest that the Court could instruct the jury that Mr. Hall's credibility determinations are not binding. As Defendants rightly point out, such a jury instruction merely side-steps the issue of initial admissibility. Next, Plaintiff simply fails to demonstrate that Mr. Hall's credibility determinations would not improperly intrude on the jury's duty to make credibility determinations. In addition, Mr. Hall has no basis for making a subjective determination which essentially accuses Defendant Rael of fabricating the bases for demotion. Consequently, the risk of unfair prejudice and influence on the jury is high. Mr. Hall's credibility determinations should be excluded under both Rules 702 and 403.

*C. Conclusion*

Although one could consider Mr. Hall's expert evidence as possibly being based on a reliable methodology, Mr. Hall's expert evidence still does not meet the relevance requirement under Rule 702. Moreover, Mr. Hall's expert evidence contains improper legal and credibility conclusions which are excludable under both Rule 702 and Rule 403. In sum, Defendants' Motion to Exclude should be granted and Mr. Hall's expert report and testimony should be excluded from this case. Plaintiff's request for an award of attorney's fees and costs will be denied.

IT IS ORDERED that:

1. DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF ANDREW HALL (Doc. No. 54) is granted;

2. Andrew Hall's expert report and testimony is excluded from this case; and

3. Plaintiff's request for an award of attorney's costs and fees is denied.

SENIOR UNITED STATES DISTRICT JUDGE