IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

ANTHONY ROBBIN,

      Plaintiff,

vs.                                  Civ. No. 11-879 JP/RHS

CITY OF SANTA FE;
RAY RAEL, individually and in his official capacity;
GALEN BULLER, individually and in his official capacity;
ROBERT P. ROMERO, individually and in his official capacity;
CHRISTINE KUBELI, individually and in her official capacity; and
NANCY JIMENEZ, individually and in her official capacity.

      Defendants.

MEMORANDUM OPINION AND ORDER

      This is an employment case in which Plaintiff, a former police captain employed by

Defendant City of Santa Fe (City), is suing for damages resulting from (1) an April 2011

decision to demote him to the position of lieutenant, and (2) his subsequent expedited retirement

as a captain.  Plaintiff claims that he applied for and obtained what a job announcement

described as a "classified" position of captain, which under the City's policies and procedures

requires due process prior to a demotion.  *See* Defendants' Ex. F (Doc. No. 52-6); Defendants'

Ex. H (Doc. No. 52-8) at 7 ("Classified employees may be . . . demoted . . . only when there is

just cause.").  Defendants claim that the position of captain which Plaintiff accepted was

"exempt," thereby allowing a demotion without due process.  *See* Defendants' Ex. E (Doc. No.

52-5) at 3 (exempt employees are "exempt from the City Personnel Ordinance and City Rules

and Regulations, except as otherwise noted.").  Plaintiff's lawsuit is based on claims for breach

of an employment contract, breach of the covenant of good faith and fair dealing, violation of the

Fourteenth Amendment due process clause under 42 U.S.C. § 1983, and for constructive

discharge.  Defendants now move for summary judgment on all of Plaintiff's claims and assert a

qualified immunity defense to the § 1983 claim.  *See* DEFENDANTS' MOTION FOR

SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (Doc. No. 52) (Motion for

Summary Judgment), filed Oct. 17, 2012.  Should the Court deny the Motion for Summary

Judgment, Plaintiff seeks an award of the attorney's fees and costs he incurred in responding to

the Motion for Summary Judgment.

*A.  Background* [1]

        The central issue in this case is whether Plaintiff was promoted in April 2008 to the

position of "classified" captain or to the position of "exempt" captain.  In June 2004, the City

Chief of Police, Beverly Lennen, proposed transitioning the captain positions from classified

positions to exempt positions.  Before Chief of Police Lennen made this proposal, she had

consulted "with Human Resources and Legal, as well as the City Clerk's Office, to make sure

that nothing in the city ordinance preclude[d] this type of transition."  Defendants' Ex. D (Doc.

No. 52-4) at 2.  The City Manager at that time, Jim Romero, approved Chief of Police Lennen's

proposal.  Jim Romero did not believe that he needed to obtain the approval of anyone else in

order to give effect to Chief of Police Lennen's proposal.  *See* Defendants'  Ex. B (Doc. No. 66-

2) at 24.

        Plaintiff initially testified at his deposition that he understood that the 2004 transition of

classified captain positions to exempt positions was only "for that administration."  Defendants'

Ex. A (Doc. No. 52-1) at 43.  Plaintiff, however, then testified to a contradictory understanding

---

        [1]Unless otherwise indicated, the facts presented in this section are undisputed.  Moreover,
since the Court has excluded the expert evidence of Andrew Hall, the Court will not consider his
evidence in deciding the Motion for Summary Judgment.  MEMORANDUM OPINION AND
ORDER (Doc. No. 77), filed Jan. 23, 2013.

that the position of captain "may be classified or exempt." *Id*. at 47.  Significantly, Plaintiff did

not know of any police officer promoted to captain after June 2004 who held a classified

position; the promoted captains he spoke to about their positions stated that they were exempt

employees. *Id*. at 56.  Additionally, the only communication to Plaintiff from the City or its

employees that the captain's position Plaintiff applied for was classified came from the job

announcement itself. *Id*. at 59.

After Plaintiff applied for the position of captain, he was allowed to test for that position

and, in December 2007, Plaintiff was ranked number one on a list of eligible applicants.

Although only applicants for classified positions are required to test for those positions and a list

of eligible applicants is created from that pool of applicants, Chief of Police Lennen stated in her

2004 proposal to transition classified captain positions to exempt positions that the police

department would "maintain the testing process for the rank of Captain and select the exempt

Captain from the approved list of eligibles."  Defendants' Ex. D (Doc. No. 52-4) at 1;

Defendants' Ex. H  (Doc. No. 52-8) at 2 (general directive requiring the testing of applicants to

classified positions and the creation of a list of eligible applicants for those positions "is not

applicable to the selection of Exempt Ranks").  In fact, there is no policy or procedure

preventing the City from testing applicants applying for exempt positions and subsequently

creating a list of eligible applicants.

Plaintiff was then offered the position of captain and accepted that offer on April 16,

2008. *See* Defendants' Ex. G (Doc. No. 52-7).  City Deputy Police Chief Montano and City

Police Chief Eric Johnson were present on April 16, 2008 when Plaintiff received a blank

Human Resources Action Request form, which was required to effect the promotion to captain.[2]

Chief of Police Johnson stated to Plaintiff that the position of captain was exempt and that the

job announcement mistakenly indicated that the position was classified.  The Human Resources

Action Request would later note in three places that the captain's position was exempt.[3]  Plaintiff

stated to Chief of Police Johnson that the position he applied for was classified, but Plaintiff,

nonetheless, signed the Human Resources Action Request form knowing that the position would

be exempt.

That same day, April 16, 2008, Plaintiff visited Defendant Galen Buller, the acting City

Manager, who likewise advised Plaintiff that the captain's position was exempt and presented

Plaintiff with a Rank Status Memo to that effect.  The Rank Status Memo stated that:  (1) the

rank of Captain was an exempt position; (2) Plaintiff held the rank of Captain "at the pleasure of

the Chief of Police" with the approval of the City Manager; (3) the City "may demote [Plaintiff]

from this rank at any time for any reason;" (4) Plaintiff did not "have a property right to this rank

or the corresponding pay raise;" (5) Plaintiff was not "entitled to any hearings or proceedings of

any kind or nature prior to [his] removal from this rank and the appropriate reduction in salary;"

and (6) "[o]ral representations and promises about security in this rank or other conditions of

holding this rank [were] not authorized by [Defendant Buller], the City Manager, and [were]

unenforceable."  Defendants' Ex. B (Doc. No. 52-2).  Plaintiff again disagreed that the position

---

[2]Apparently, an initial receipt of a blank Human Resources Action Request form was common practice at the police department.

[3]Oddly, someone from the Budget Department checked a box on the Human Resources Action Request form indicating that the position was classified.  This action, however, is contradicted by three other indications on the form that the position was exempt including this statement in the Comments section: "SELECTED FROM LIST OF ELIGIBLES.  EMPLOYEE SHALL ASSUME THE EXEMPT RANK OF CAPTAIN."  Defendants' Ex. G (Doc. No. 52-7).

of captain was exempt and stated that the position was actually classified as indicated by the job announcement.  Even so, Plaintiff signed the Rank Status Memo acknowledging and accepting that the position of captain was exempt so he could be promoted to captain.  Plaintiff did not further complain about the exempt status of his new position because he felt the City would not change the position to classified.  He also did not sign the Rank Status Memo under protest because he did not know that he could do so.  The promotion became effective April 19, 2008. *See* Defendants' Ex. G (Doc. No. 52-7).  Plaintiff subsequently considered himself to be an exempt employee.  *See* Defendants' Ex. N (Doc. No. 52-14).

About three years later, Plaintiff received a Memo on April 26, 2011 from Defendant Ray Rael, the interim City Chief of Police, stating that Plaintiff was being demoted from the position of captain to the position of lieutenant "effective immediately."  Defendants' Ex. C (Doc. No. 52-3).  Defendant Rael explained that Plaintiff served "as a Captain . . . in an exempt (at will) position subject to the pleasure of the Chief of Police, with the right of reversion to the rank of Lieutenant."  *Id*. at 1. Defendant Rael further explained that Plaintiff did not have a right of appeal and that Defendant Rael had the discretion to demote Plaintiff.  Defendant Rael justified the demotion decision on three grounds: (1) Plaintiff failed to comply with Defendant Rael's "directive to wear a duty uniform;" (2) Plaintiff failed to comply with Deputy Chief Gillian Alessio's direction to wear a duty uniform; and (3) Defendant Rael was "dissatisfied" with Plaintiff's "failure to explain the source and methodology of the statistics [Plaintiff] provided to the media and the Public Works/CIP and Land Use Committee regarding the DUI Forfeiture program on Monday April 24, 2011."  *Id*.

Also, on the same day Plaintiff received the demotion Memo, Defendant Nancy Jimenez, a Human Resources Administrator, was informed about the demotion decision, presumably by

Defendant Rael, and responded to Plaintiff's request for information regarding expedited

retirement.  Ms. Jimenez sent Plaintiff an email that day with different retirement calculations

and stated that Plaintiff must respond to her "by 11:00 a.m. tomorrow or the Captain down to

Lieutenant and the 10% reduction paperwork will be processed."  Defendants' Ex. I (Doc. No.

52-9) at 1.  Ms. Jimenez also noted that a rate reduction could "hurt" Plaintiff's retirement check.

*Id*.  Plaintiff ultimately decided to retire "involuntarily" as a captain rather than be demoted to

the position of lieutenant.  Finally, neither Defendant Buller nor Defendant Kristine Kuebli

(misspelled in caption) participated in the decision to demote Plaintiff nor were they involved in

processing Plaintiff's retirement.

*B.  Standard of Review*

Summary judgment is appropriate if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary

judgment motions involving a qualified immunity defense are determined somewhat differently

than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995).

"When a defendant raises the qualified immunity defense on summary judgment, the burden

shifts to the plaintiff to meet a strict two-part test."  *Nelson v. McMullen*, 207 F.3d 1202, 1206

(10th Cir. 2000).  This is a heavy burden for the plaintiff.  *Medina v. Cram*, 252 F.3d 1124, 1128

(10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  First, the

plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right.

Second, the plaintiff must show that the "right was clearly established such that a reasonable

person in the defendant's position would have known that his conduct violated that right."

*Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).  The Court may in its discretion decide

which of the two-parts of the qualified immunity test to address first.  *Pearson v. Callahan*, 555

U.S. 223, 236 (2009).  The Court will grant qualified immunity if the plaintiff fails to meet either part of the qualified immunity test.  *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (internal quotation marks omitted).  Only if the plaintiff establishes both parts of the qualified immunity test does the defendant bear the traditional summary judgment burden of showing "that no material facts remain in dispute that would defeat her or his claim of qualified immunity."  *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989).  If the defendant satisfies this traditional burden, then the burden shifts to the plaintiff to come forward with evidence showing that there is a genuine issue of material fact. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

## C.  Discussion

Because subject matter jurisdiction in this case is based on the presence of a federal question, i.e., the § 1983 Fourteenth Amendment due process claim, the Court will address this claim first in order to assess whether the Court should exercise supplemental jurisdiction over the state claims.  Plaintiff's § 1983 claim is brought against all of the individual Defendants and consists of two parts.  First, Plaintiff alleges that Defendant Rael's decision to demote Plaintiff without due process violated the Fourteenth Amendment.  Second, Plaintiff seems to allege that Defendants Rael and Jimenez violated the Fourteenth Amendment when Defendant Rael informed Defendant Jimenez of the demotion decision and when Defendant Jimenez communicated to Plaintiff information regarding expedited retirement as a captain.  Defendants make two arguments in favor of granting summary judgment on the § 1983 claim: (1)  Plaintiff failed to establish a § 1983 claim against Defendants Buller and Kuebli; and (2) Defendants Rael and Jimenez are entitled to qualified immunity.  The Court will examine these arguments in turn.

### 1. The § 1983 Claim Against Defendants Buller and Kuebli

It is well-known that to establish a § 1983 claim, the plaintiff must show that the individual defendant had "direct personal responsibility for the claimed deprivation of a constitutional right. . . ." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).  The § 1983 claim in this case is based on the actions of Defendants "[c]ommencing in April, 2011" which led to the demotion Memo and Plaintiff's later retirement.  CIVIL COMPLAINT (Doc. No. 1) at ¶ 26, filed Sept. 30, 2011.  It is undisputed, however, that Defendant Buller no longer worked for the City in April 2011 and that Defendant Kuebli was no longer the human resources director for the City in April 2011.  Defendants' Ex. K (Doc. No. 52-11) at 3; Defendants' Ex. L (Doc. No. 52-12) at 1.  Under these circumstances, Defendants Buller and Kuebli could not have been personally responsible for the alleged violation of the Fourteenth Amendment which arose from the April 2011 demotion Memo and Plaintiff's subsequent retirement.  Hence, as a matter of law, Plaintiff has not established a § 1983 claim against Defendants Buller and Kuebli, and that claim is subject to summary judgment.

### 2. Qualified Immunity and Defendants Rael and Jimenez

#### a. Defendant Rael's Decision to Demote Plaintiff

In discussing the application of qualified immunity to Defendant Rael for his decision to demote Plaintiff, Defendants contend that Plaintiff has not met the first part of the qualified immunity test which requires a constitutional or statutory violation by Defendant Rael. Defendants argue specifically that Plaintiff has not come forward with facts to demonstrate that Defendant Rael's decision to demote Plaintiff to the position of lieutenant violated the due process clause of the Fourteenth Amendment which "protects individuals from deprivations of 'life, liberty, or property, without due process of law.'" *Greene v. Barrett*, 174 F.3d 1136, 1140

(10th Cir. 1999) (quoting U.S. Const. amend. XIV).  To establish that the due process clause has

been violated, a plaintiff must show a protected interest which was deprived without due

process.  *Id*.  Here, Defendants contend that Plaintiff did not have a property interest in his

position as captain.  Defendants correctly note that it is undisputed that when Plaintiff signed the

Rank Status Memo prior to assuming his promotion as captain Plaintiff acknowledged that he

was accepting an exempt position and that he did not have a property interest in the position of

captain.

Plaintiff argues, on the other hand, that Defendant Rael is not entitled to qualified

immunity with respect to his decision to demote Plaintiff  because Jim Romero, the City

Manager in 2004, did not have the authority to approve Chief of Police Lennen's proposal to

transition the classified captain positions to exempt positions, i.e., Plaintiff argues that Jim

Romero's approval of Chief of Police Lennen's proposal was *ultra vires*.  Plaintiff points to the

City of Santa Fe Personnel Rules/Regulations and Polices (effective July 1, 1989) (City

Personnel Rules/Regulations and Policies) Rule 2.30(3) which states that "[t]he Personnel

Ordinance and Rules and Regulations cover all employees except . . .  employees designated as

exempt by the City Manager <u>and approved by the governing body</u>. . . ."  Emphasis added.

Plaintiff maintains that Jim Romero did not have the approval of the governing body when he

approved Chief of Police Lennen's proposal and that all subsequent employment decisions based

on that approval are, therefore, legally null and void.  Consequently, the decision to make the

captain's position Plaintiff applied for exempt and the decision to demote Plaintiff without due

process are legally null and void.  Plaintiff asserts that since those decisions are legally null and

void, the captain position he applied for should have been classified and that, as a classified

employee, he could not have been demoted  (and forced to retire) without due process under the

City's rules, regulations, and policies pertaining to classified employees.

Defendants counter that Jim Romero, as the City Manager, had the sole authority to approve Chief of Police Lennen's proposal.  Defendants note that under the City of Santa Fe Code (1987) (amended through June 30, 2012) (City Code) the governing body cannot engage in any executive actions "in the administration of the personnel system except as authorized by law and the City Personnel Act."  City Code, chapter 2-1.9.  The governing body is restricted:

> A.  To employ and remove the city manager;
> B.  To make collective recommendations to the city manager on general personnel policies;
> C.  To approve rules and regulations to implement the City Personnel Act;
> D.  To approve by a majority vote of the governing body any proposed reorganization of city government which either creates or abolishes a department.

*Id*.  Moreover, the City Manager has broad powers as the City's chief administrator including the power to hire and fire City employees.  City of Santa Fe Municipal Charter (as adopted March 4, 2008), art. VIII, § 8.03.  More specifically, the City Manager "is responsible for the administration of the city personnel merit system" and can recommend personnel rules and regulations, "[i]ssue supplemental personnel rules and regulations," and "develop, maintain and apply procedures" relating to personnel management.  City Code, chapter 19-4.2.  *See also* City Code, chapter 19-5.2 ("Supplemental Rules and Regulations").  The City Manager may also "issue interpretive memoranda necessary to interpret the provisions" of the City Personnel Ordinance as well as issue rulings when there are conflicting rules, regulations, or interpretations.  *Id*. at 19-5.4.  Defendants assert that in addition to this broad authority to administer the City's personnel system, the City's personnel rules and regulations provide that a reclassification of position status is "subject only to the approval of the City Manager," citing to City Personnel Rules/Regulations and Policies Rule 5.20(C).  DEFENDANTS' REPLY IN

SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (Doc. No. 73) at 9, filed Nov.

29, 2012. Rule 5.20(C), however, states that "Departments may recommend the allocation or

reclassification of positions to one of the classifications as established by Classification Plan or a

new classification, subject to approval by the Director [of Personnel] and City Manager."

Emphasis added.

Acknowledging that the governing body is somewhat restricted in dealing with personnel

matters and that the City Manager generally has broad powers in personnel matters, the Court

believes that Rule 2.30(3), nevertheless, implicates the governing body in the approval of who

are exempt employees. Rule 5.20(C), on the other hand, requires that the City Director of

Personnel (not the governing body), in addition to the City Manager, approve both

reclassifications and allocations of positions to other classifications. Plaintiff, nevertheless,

contends that Rule 5.20(C) does not apply to Chief of Police Lennen's proposal because Rule

5.20(C) applies to "reclassifications" which are defined as a "process of analysis by which an

established position is reviewed to determine whether the duties and responsibilities of [a]

position warrant a change in classification designation." City Personnel Rules/Regulations and

Policies, Rule 1 at 13. In fact, Chief of Police Lennen's request was not a request for

"reclassification;" she did not base her proposal on the duties and responsibilities of captains.

Rule 5.20(C), however, also applies to an "allocation" which "means the action taken to assign a

position to an appropriate classification." City Personnel Rules/Regulations and Policies, Rule 1

at 10. Chief of Police Lennen's request to "transition" the position of captain to an exempt

position appears to be a request for an allocation of the classified captain position to the more

appropriate exempt classification. In either case, whether Rule 2.30(3) or Rule 5.20(C) is

applicable to Chief of Police Lennen's proposal, Jim Romero's failure to obtain additional

11

approvals, either from the governing body or from the City Director of Personnel, for Chief of

Police Lennen's proposal could lead one to conclude that Jim Romero acted outside the scope of

his authority in approving that proposal.  Moreover, the Court notes that there is no evidence that

any City Manager has issued a ruling or interpretive memorandum resolving the apparent

conflict between Rule 2.30(3) and Rule 5.20(C).

As Plaintiff observes, "an official who performs an act clearly established to be beyond

the scope of his discretionary authority is not entitled to claim qualified immunity under §

1983."  *In re Allen*, 106 F.3d 582, 593 (4th Cir. 1997).  "This test is objective, and examines

what a reasonable official in the defendant's position would have understood the limits of his

statutory authority to be."  *Id*.  For a defendant to claim qualified immunity, the defendant must

show that the alleged illegal conduct "falls within his authority unless a reasonable official in the

defendant's position would have known that the conduct was clearly established to be beyond

the scope of that authority."  *Id*. at 594.  To decide the qualified immunity issue in that situation,

the Court examines the various statues or regulations which control the scope of the official's

duties.  *Id*. at 595.  The Court does not examine "whether the official properly exercised his

discretionary duties, nor whether he violated the law."  *Id*. at 594.

In this case, the Defendant who decided to demote Plaintiff without due process, an

action Plaintiff claims violated the Fourteenth Amendment, was the interim Chief of Police, Ray

Rael.  None of the parties assert that Defendant Rael, as the interim Chief of Police, did not have

the authority to demote police officers, including both classified and exempt police officers.  The

question then is whether a reasonable official in Defendant Rael's position would have

understood that he was acting outside the scope of his authority in deciding to demote Plaintiff

as an exempt employee.

Defendant Rael's decision to demote Plaintiff without due process, as an exempt employee, was based on the Rank Status Memo which Plaintiff signed as a condition to his promotion to the position of captain.  A reasonable official in Defendant Rael's position would have interpreted the signed Rank Status Memo to mean that Plaintiff agreed to accept an exempt position which could result in a demotion at anytime for any reason.  Even Plaintiff concedes that he accepted the position of captain with the understanding, as reflected in the conversations prior to signing the Rank Status Memo, the Rank Status Memo itself, and Plaintiff's later reference to himself as an exempt employee, that he was accepting an exempt position.

A reasonable official would also have known that Jim Romero, in his capacity as City Manager and chief personnel administrator for the City, whether rightly or wrongly, approved Chief of Police Lennen's proposal in 2004.  A reasonable official could have also discovered that Chief of Police Lennen had consulted with the human resources department, the legal department, and the Clerk's office prior to making her proposal to ensure that it did not violate any City ordinances.  Moreover, a reasonable official would have known that the police department had relied on that approved proposal to make future captain positions exempt.   As Plaintiff acknowledged, the captains he knew who were promoted to those positions after June 2004 indeed held exempt positions.  Moreover, Plaintiff said that even though he thought Chief of Police Lennen's proposal was limited to that "administration," he believed a captain's position could be exempt.  All of these circumstances would lead a reasonable official in Defendant Rael's position to believe that the approval and application of Chief of Police Lennen's proposal was legitimate.  *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003) (for civil rights defendants to be liable, those defendants must be on notice that their actions are unlawful); *Bright v. McClure*, 865 F.2d 623, 625-26 (4th Cir. 1989) (qualified

immunity applied when defendant was unaware of rule). A reasonable official, therefore, would have believed that Chief of Police Lennen's proposal granted him the authority to demote Plaintiff as an exempt employee. In sum, Plaintiff has failed to demonstrate that a reasonable official in Defendant Rael's position would have thought that the decision to demote Plaintiff was outside the scope of his authority. Defendant Rael is, therefore, entitled to qualified immunity on the § 1983 claim based on the decision to demote Plaintiff, and the Court will grant summary judgment on that particular aspect of the § 1983 claim.

### b. Plaintiff's Expedited Retirement as Captain

Plaintiff also seems to argue that Defendant Rael should not have informed Defendant Jimenez that Plaintiff was demoted and that this action somehow violated the Fourteenth Amendment. Moreover, Plaintiff apparently alleges that Defendant Jimenez violated the Fourteenth Amendment by providing him with retirement information at his request. Plaintiff's one paragraph response to Defendants' arguments in favor of qualified immunity does not address whether these subsequent actions by Defendants Rael and Jimenez violated a constitutional or statutory right, or whether a "right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." *See* PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (Doc. No. 66) at 21-22, filed Nov. 12, 2012. Plaintiff has, therefore, failed to carry his heavy burden of demonstrating that these Defendants are not entitled to qualified immunity for their actions following Defendant Rael's decision to demote Plaintiff. Consequently, Defendants Rael and Jimenez are entitled to qualified immunity, and the Court will grant summary judgment on that part of the § 1983 claim.

*D. Conclusion*

Because the Court has concluded that Plaintiff's federal § 1983 claim is subject to summary judgment, the Court must decide if it should continue to exercise supplemental jurisdiction over the remaining state claims. According to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction. *See Lancaster v. Independent School Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998). Where federal question jurisdiction has been asserted, as in this case, and all of the federal claims are dismissed before trial, the courts will generally dismiss the state law claims without prejudice. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997). Since Plaintiff's § 1983 claim is subject to summary judgment, the Court declines to exercise supplemental jurisdiction over the state law claims and those claims will, therefore, be dismissed without prejudice. Finally, considering the Court's disposition of this case, Plaintiff's request for an award of attorney's fees and costs is denied.

IT IS ORDERED that:

1.  DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT AND MEMORANDUM IN SUPPORT (Doc. No. 52) is granted in that the Court will enter summary judgment on the § 1983 claim and the Court will dismiss the remaining state claims without prejudice; and

2.  Plaintiff's request for an award of attorney's fees and costs is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE